***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, which has jurisdiction over the subject matter and the parties.
2. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all relevant times, the Plaintiff was an employee of the Defendant-employer.
4. The carrier on the risk for the employer in this claim is the North Carolina Insurance Guaranty Association, successor to Reliance National Insurance Company, which has been liquidated.
5. The Plaintiff's average weekly wage as of February 21, 2000 was $229.67, which yields a compensation rate of $153.12.
6. Plaintiff alleges that on February 21, 2000 she sustained a disabling left leg injury by accident arising out of and in the course of her employment with Defendant Wilkes Senior Village. Defendants deny Plaintiff's allegations and that her injury and any disability are causally related to her employment.
7. The parties submitted the following documents as evidence via stipulation:
 a. Stipulated Exhibit 1, consisting of 11 pages of Industrial Commission Proceedings.
 b. Stipulated Exhibit 2, consisting of 17 pages of Plaintiff's medical records prior to February 21, 2000.
 c. Stipulated Exhibit 3, consisting of 48 pages of Plaintiff's medical records from February 21, 2000 forward.
 d. Stipulated Exhibit 4, consisting of 4 pages of Plaintiff's physical therapy records (these records were duplicates of pages 33-36 of Stipulated Exhibit 3).
8. The depositions of Dr. John L. Bond, Jr., Dr. James Thomas Bowman, and Dr. Charles Essex are a part of the evidentiary record of this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing of this matter, plaintiff was fifty-six (56) years old. Plaintiff completed the ninth grade and then received her GED in 1973. In 1998, plaintiff earned her certified nursing assistant (CNA) certificate from Wilkes Community College.
2. From 1970 through 1978, plaintiff worked as a sewer, a position in which she was usually seated. From 1978 through 1997, plaintiff performed various unskilled jobs in the textile industry. Most of plaintiff's jobs involved constant standing and some involved more rigorous physical effort such as pushing, stooping, bending, climbing and lifting. During 1997 through part of 1998, plaintiff worked as a cashier, which involved mostly standing.
3. After completing CNA training around December 1998, plaintiff first began working as a CNA for Avanti of Wilkesboro. Plaintiff's employment with Avanti continued through May 1999. Plaintiff's job duties included assisting senior patients with daily activities such as bathing, eating, and getting in and out of bed. Plaintiff's job duties required that she be on her feet much of the time, with some bending, stooping and lifting, while helping to care for these elderly patients.
4. Prior to her employment with defendant-employer, as early as May 1994, plaintiff had a history of left leg swelling and pain due to deep venous thrombosis (DVT) and phlebitis. Plaintiff had been treated for this condition by Dr. David Kim, a vascular surgeon, and later Dr. Filip Babnic. Phlebitis is inflammation and irritation of the saphenous vein of the leg which starts in the groin and extends all the way down the leg. In deep venous thrombosis patients, blood clots tend to form in the veins, and it is associated with pain. A patient may be treated for DVT with blood thinners. Due to her left leg phlebitis, plaintiff was unable to work for part of 1994.
5. In early 1999, plaintiff was hospitalized for deep venous thrombosis of her left leg. She was anticoagulated and discharged on Coumadin, a blood thinner. Plaintiff had significant left leg swelling which was improved after discharge from the hospital. By February 1999, plaintiff again required anticoagulant treatment, including Coumadin, to treat the thrombo-phlebitic condition of her left leg. As early as February 22, 1999, due to her condition, Dr. Babnic noted the possibility of "disability evaluation." Dr. Babnic allowed plaintiff to continue working, but limited her work schedule to four hours per day. At that time, plaintiff's weight was two-hundred twenty-two (222) pounds.
6. In March 1999, plaintiff returned to her regular work duties as a CNA with Avanti, despite some chronic swelling in her left lower leg for which her physician prescribed elastic stockings and Coumadin. In June 1999, plaintiff began working full time as a CNA for defendant-employer. Plaintiff worked primarily with patients suffering from Alzheimers disease. Plaintiff was paid $6.00 per hour and usually worked twelve hour shifts and about forty hours per week. Plaintiff was able to perform her work duties despite the thrombo-phlebitic condition of her left leg.
7. Plaintiff continued her employment with defendant-employer until November 1999, when she voluntarily resigned, so that she could assist her son with childcare. In late January 2000, Jimmy Richardson, the owner-operator of defendant-employer, contacted plaintiff about returning to work, caring for Alzheimer patients, with adjusted hours. Plaintiff agreed and returned to work with defendant-employer on February 4, 2000, where she continued working until February 21, 2000. Plaintiff's work schedule at this time was from 8:00 a.m. to 2:00 p.m. at the same pay rate of $6.00 per hour. During this second period of employment with defendant-employer, plaintiff was able to perform her work duties despite the thrombo-phlebitic condition of her left leg.
8. On the morning of February 21, 2000, plaintiff reported to work at about 8:00 a.m. As she walked down the hallway of defendant-employer's building, a patient called out to plaintiff for assistance. As plaintiff was turning to address the patient, she tripped on the carpet and fell forward, landing on her knees and injuring her left leg. Plaintiff was unable to get up due to her injured left leg. Fellow employees and nurse supervisor Sheila Owens helped plaintiff get to her feet. Ms. Owens arranged for plaintiff to be transported to Dr. Bowman's office for evaluation and treatment of her injured left leg.
9. Plaintiff was then taken to the hospital, where Dr. Charles P. Essex examined her. Plaintiff told Dr. Essex that she had stumbled and fallen while walking across a carpeted area at work. Plaintiff complained that her knees were hurting, the left knee worse than the right. Plaintiff also informed Dr. Essex that she had been taking Coumadin. Dr. Essex noted obvious ecchymosis and assessed a left knee contusion. Dr. Essex sent plaintiff for an x-ray, which revealed no fractures but did reveal significant diffuse soft tissue swelling of her left leg due to the fall. Dr. Essex prescribed rest, pain medicine, crutches, a leg immobilizer and ice.
10. Sheila Owens, a supervisor for defendant-employer, completed an incident report regarding plaintiff's fall. Although Ms. Owens testified that plaintiff told her she did not trip, this is contradicted by plaintiff's testimony and the medical records, which show plaintiff told the doctor that she stumbled. The Full Commission gives greater weight to plaintiff's testimony that she stumbled and fell.
11. By the next day, February 22, 2000, plaintiff's left leg had turned black and blue and had become very swollen. On February 23, 2000, plaintiff saw Dr. Bowman, complaining of pain in her left leg from her thigh to her foot, severe swelling, and a large blood blister on her left knee. Dr. Bowman examined her left leg and immediately referred plaintiff to general surgeon Dr. John Bond for further evaluation and treatment for her significantly swollen left leg. Plaintiff was transferred to Dr. Bond's office by EMS personnel.
12. Dr. Bond examined plaintiff and found she had severe swelling and ecchymosis in her left leg and bleeding into the joint of her left knee with so much pressure that she had developed blood blisters over the patella area. Dr. Bond drained the blood blisters to prevent infection and admitted plaintiff to the local hospital. Plaintiff remained in the hospital until March 14, 2000, receiving treatment for her leg, including treatment to stop the bleeding.
13. As Dr. Bond has testified, Coumadin is a blood thinner, which interferes with the blood's clotting or coagulating. A person on Coumadin who suffers a bruise or a cut will bleed excessively. Plaintiff had been on Coumadin about a year prior to her fall on the morning of February 21, 2000. Plaintiff's long-term use of Coumadin compounded the severity of her left leg injury, causing her to develop excessive bleeding and swelling of her left leg. Dr. Bond took plaintiff off Coumadin, to facilitate healing, though her left leg was slow to heal.
14. Dr. Bond testified and the Full Commission finds that plaintiff's fall onto her left knee on February 21, 2000 aggravated her pre-existing phlebitis in her left leg, resulting in significantly increased swelling, pain, and weakness in her left leg. Plaintiff's injury interfered with her ability to walk, such that she needed the aid of a walker.
15. Dr. Bond continued to treat plaintiff throughout March and April, 2000. By May 2, 2000, plaintiff's leg was not completely healed; even so, Dr. Bond noted that plaintiff was making reasonable progress. At this visit, plaintiff was having some difficulty walking and Dr. Bond advised her to continue walking, using a walker. At this time, Dr. Bond also restarted plaintiff on Coumadin and planned to see her in a month.
16. Plaintiff saw Dr. Bond again on June 1, 2000, at which time he noted moderate swelling in her knee. Dr. Bond drained some purulent material from plaintiff's knee and advised her to continue soaks three times per day for twenty minutes each. On June 22, 2000, Dr. Bond debrided plaintiff's left knee, removing a great deal of dead tissue from the area. On August 9, 2000, Dr. Bond again performed this procedure to remove dead tissue.
17. Plaintiff was last examined by Dr. Bond on November 13, 2000. At that time, Dr. Bond found that plaintiff's left knee infection had completely healed and she had reached maximum medical improvement from that injury. At this visit, Dr. Bond released plaintiff from his care, to be followed as needed by her family physician, Dr. Bowman.
18. Dr. Bowman saw plaintiff on several occasions in 2001. Dr. Bowman has written two notes stating his opinion that plaintiff was totally disabled at the time. In a note dated September 19, 2000, Dr. Bowman wrote that plaintiff was having a great deal of pain and was still utilizing a walker due to her injuries, and was, in his opinion, totally disabled from employment at that time. On January 11, 2001, Dr. Bowman wrote a note stating that plaintiff continued to be totally disabled at that time.
19. The greater weight of the evidence shows that on February 21, 2000, plaintiff sustained an injury by accident in the course of her employment with defendant-employer when she stumbled and fell while walking down the hallway at work. As a result, plaintiff sustained injury to her left knee and significantly aggravated pre-existing phlebitis in her left leg.
20. At the time of the deputy commissioner hearing of this matter, plaintiff continued to walk with the aid of a walker. Plaintiff can only stand for a short period of time or walk for short distances due to her left leg condition. Plaintiff cannot sit for more than a couple of hours at a time without having to elevate her left leg above her heart in order to control the amount of swelling in her leg.
21. Plaintiff has been unable to earn wages in any employment since her fall of February 21, 2000 due to pain, swelling, and weakness in her left leg. Plaintiff cannot return to her prior employment as a certified nursing assistant due to her obesity and impaired mobility. The evidence of record fails to show that plaintiff is capable of earning wages in any other employment at this time.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On February 21, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she stumbled and fell on defendant-employer's premises injuring her left leg. N.C.G.S. § 97-2(6).
2. As a consequence of her injury by accident of February 21, 2000, plaintiff needed medical treatment for her left leg. Defendants are responsible for payment for all such reasonably necessary medical treatment, including the care rendered by Dr. Bond and Dr. Bowman. N.C.G.S. §§ 97-25, 97-2(19).
3. As stipulated by the parties, plaintiff's average weekly wage as of February 21, 2000 was $229.67, which yields a compensation rate of $153.12. N.C.G.S. § 97-2(5).
4. As a consequence of her injury by accident of February 21, 2000, plaintiff has been unable to earn wages in the same or any other employment and has been totally disabled since February 21, 2000. N.C.G.S. § 97-29.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. To the extent that the same is reasonably necessary to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of her left leg injury of February 21, 2000, including the treatment by Dr. Bowman and Dr. Bond, and also including all medications and any surgical services that were deemed necessary. Defendants are not responsible for payment for ongoing medical treatment of plaintiff's pre-existing thrombosis and phlebitis.
2. Defendants shall pay plaintiff compensation benefits at the rate of $153.12 per week as total disability compensation beginning February 21, 2000 and continuing until further order of the Commission. All amounts that have accrued to date shall be paid in a lump sum.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the disability compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the accrued compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay all costs.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER